PUTNEY & COMPANY *et al. v.* KOHLER *et al.*

BLECKLEY, C. J.—1. The pressure of the case as to injunction, etc. being upon the question of fact as to whether the non-resident creditor sought to be enjoined was a *bona fide* creditor and mortgagee without notice of any fraud in the transaction by which the mortgagor acquired title to the goods in controversy, and there being ample evidence to warrant the judge in finding in favor of such *bona fides* and want of notice, there was no error in refusing the injunction prayed for.
2. An affidavit tendered and received in evidence on the hearing of an application for injunction, no objection being made on the ground of incompetency of the witness, and no motion being made to withdraw or rule out the affidavit, may be considered. whether the witness was competent or not. *Judgment affirmed.*

SIMMONS, J., not presiding, because of sickness.

January 27, 1890.

Injunction. Debtor and creditor. Mortgage. Fraud. *Bona fides.* Notice. Title. Evidence. Practice. Before Judge JENKINS. Morgan county. At chambers, December 20, 1889.

On the 24th, 28th and 30th of October, 1889, the plaintiffs sued out attachments under the code, §3297,

against B. F. Kohler & Company, of Richmond county, which attachments were levied by the sheriff of Morgan county upon a stock of goods in Madison in the possession of S. D. Kohler, who filed claims *in forma pauperis*. Subsequently M. S. Kohler, of Louisville, Kentucky, by his attorneys, foreclosed upon the same stock of goods a chattel mortgage dated September 17th, 1889, due one day after date, given by S. D. Kohler to secure a note for $4,000 ; and under order of the superior court, the sheriff advertised the goods to be sold on November 27th under this foreclosure. On November 25th, the plaintiffs, creditors of B. F. Kohler & Co. for goods purchased amounting to over $8,000, brought their petition to Morgan superior court, attacking the mortgage as fraudulent and void, and alleging that the goods were not the property of S. D. Kohler but of Kohler & Co., and were subject to petitioners' attachments; that Kohler & Co., during 1889, purchased from plaintiffs and others, goods on credit amounting to $60,000 and had them shipped to their store in Augusta ; that up to about September 1st, 1889, S. D. Kohler was a clerk in that store on a very small salary and possessed of no estate ; that B. F. Kohler pretended to sell to him goods amounting to $10,000 and shipped them to Madison, where, about September 10th, 1889, he opened a store and commenced business with those goods ; that at the time of this pretended sale and the giving of the note and mortgage to M. S. Kohler, Kohler & Co. were insolvent, and this was known to the other Kohlers; that this conveyance of the goods and giving of the note and mortgage were not *bona fide*, but a conspiracy to defeat the claims of the creditors of Kohler & Co., who in less than two months after the pretended sale delivered to various parties mortgages on the entire remaining stock of goods in Augusta, amounting to about $49,000, which mortgages have been foreclosed

v 84-34

and the stock of goods, on November 18th, 1889, sold; and that M. S. Kohler did not and could not have advanced or loaned to S. D. Kohler $4,000, or any like sum, because he is engaged in a small business and is not worth exceeding ten thousand dollars, and besides this pretented loan he claims to have loaned Kohler & Co. $8,000, secured by a mortgage on the stock in Augusta, dated September 25th, 1889. Plaintiffs pray for injunction against the selling or disposing or interfering with the goods in the sheriff's hands under levy of mortgage *fi. fa.;* for a receiver to take charge of those goods and of all other property lately in the possession of S. D. Kohler, and to sell the same for the benefit of the plaintiffs and hold proceeds subject to the order of the court; and that M. S. Kohler be required to deliver up the note and mortgage made to him, and that they be decreed to be void and of no effect; etc.

A temporary restraining order was passed. The answers of the Kohlers showed the following: The allegations of the bill as to fraud and conspiracy, etc., and that the goods under levy of the mortgage *fi. fa.* are the property of Kohler & Co., are absolutely untrue and without any foundation. During a large part of the past seven years, S. D. Kohler was employed by Kohler & Co. as a traveling salesman at more than the average salary. In the spring of 1889, he notified them that he contemplated going into business for himself in Madison in the coming fall and would like to purchase from them his stock. They inquired how he expected to pay for it, and he replied that he had corresponded with his uncle in Louisville, who had agreed to loan him $4,000, and he expected to start with that and with $1,000 of his own which he had. In July and August he selected his stock, and it was subsequently shipped to him at Madison. On September 12th, he gave to Kohler & Co. his check for $750, which was paid, and

five days later sent them a check for $200, which was paid. On September 20th, he sent them a check of M. S. Kohler for $2,500, payable to the order of S. D. Kohler, with his endorsement thereon, on a bank in Louisville. This they deposited and drew the proceeds in the regular course of business to pay creditors, among whom was the principal plaintiff, who received on that day a part of that money. On September 28th, S. D. Kohler sent Kohler & Co. a check for $2,000, which was paid and used as the others were, and $1,500 of which was part of the $4,000 loaned him by M. S. Kohler. Subsequently he closed the balance of his indebtedness to them by giving five notes amounting to nearly $2,600, three of which were discounted for them by their bank in Augusta, and one of which ($520.57) he has paid since the levy of the attachments. That they were insolvent at the date of the sale of the goods, is denied; and it is alleged that the sale was *bona fide*, in larger part for cash, and made in the usual course of trade. When the first attachment was levied, S. D. Kohler filed his claim and tendered to the sheriff damage and replevy bonds with good security, both of which were approved by the judge of the superior court who issued the attachment; the security living in Richmond county, where the attachment was issued. The sheriff took the bonds, and after consultation with the counsel representing the attachments, refused to accept the bonds, they having been in his possession two or three days; he then returned them and notified Kohler that he must strengthen them by giving additional security. He did so, and the sheriff took the bonds without saying whether he would accept them or not, and in the course of a few hours returned and said he would accept them but that "they" had put other attachments in his hands and he had levied them. Hence all persons to whom S. D. Kohler applied to go on his bonds, learn-

ing the facts as to the actions of the sheriff, would refuse to become security, saying that it was evidently the intention of the creditors of Kohler & Co. to cause the sheriff to levy additional attachments as fast as S. D. Kohler could file his claim bonds; and thus he was compelled to file claims *in forma pauperis.* He knew nothing of the financial condition of Kohler & Co. when he purchased the goods of them, and paid a full and fair price. When he asked for a loan of $4,000 from M. S. Kohler, the latter was a stranger in the county and to the business of S. D. Kohler, and so came to Georgia and went with him to the office of Foster & Butler, and informed Butler that he desired to make the loan provided that attorney would, by a thorough investigation, satisfy himself that he (M. S. Kohler) would be perfectly safe in doing so, and distinctly stated that he would not do so unless that attorney advised him. Butler took one day to make the investigation, and then told him that the loan could be fully secured, but insisted that it would be best to make it due one day after date instead of at twelve months. He relied strictly on his attorney, left to him the drawing of the note and the mortgage, and turned over to him two checks for $1,500 and $2,500 to be given to S. D. Kohler when he had signed such papers as the attorney prepared. The mortgage was left with Foster & Butler to protect the interest of M. S. Kohler, who paid them for the drawing of the papers and for the investigation. At first he insisted upon the mortgage being recorded at once, but Butler persuaded him to the contrary, saying it would ruin S. D. Kohler's credit, but at the same time telling him that he (Butler) would keep a sharp lookout and fully protect his interest by recording or foreclosing the mortgage if he thought best. This money was loaned in good faith, and the whole of it, principal and interest, remains due and unpaid. Before

1889, M. S. Kohler was, has been ever since and still is in a very profitable business of considerable magnitude in Louisville, and at all times has enjoyed excellent credit with banks there and elsewhere, and was and is worth $30,000 and accustomed to lend large sums to various persons. The mortgage for $8,000 given to him by Kohler & Co. on September 25th, 1889, was for sums aggregating that amount actually advanced and loaned at different times from January 21st of the same year. These sums not being repaid, he went to Augusta, and after some discussion Kohler & Co. agreed to accede to his demand for security, and gave him the mortgage, which was duly recorded. It has only recently been attacked as fraudulent, in Richmond superior court, by other creditors of Kohler & Co., but was upheld and sustained as valid and *bona fide*.

In evidence appears the following: The records of the city tax-assessor of Augusta show no returns by S. D. Kohler; the only property of his shown by the books of the county tax-collector is a piece of realty returned by him and B. F. Kohler, valued at $500; these books also show a poll tax of S. D. Kohler. On record are mortgages from Kohler & Co. to various persons, amounting to $40,716.14, besides the one for $8,000 to M. S. Kohler, which is older in date than all the rest except one for $2,437.20, and is of the same date with that one. Most of them bear dates in October, 1889. Under foreclosure of one of the largest in amount, the entire stock of Kohler & Co. was sold on November 18th, 1889, for $41,153.50. Unsecured creditors of Kohler & Co. attacked the mortgages of M. S. Kohler and others as fraudulent, and sought to set them aside, praying an injunction to restrain the sale under the mortgage foreclosure. Upon the hearing, a restraining order which had been granted was discharged at the cost of petitioners, and the sheriff, who had acted as re-

ceiver, was ordered to carry into effect the final process in his hands, and make distribution according to the priorities of the liens under which the executions were issued. This decision not being appealed from, he accordingly paid, among others, the mortgage execution of M. S. Kohler. The evidence as to M. S. Kohler's city and county tax returns for 1888 and 1889 appears to show that his returns did not exceed $2,425. When S. D. Kohler desired of the sheriff possession of the stock of goods levied on under the attachments, that officer told him he would have to require a bond of $16,000, double the value of the goods. Kohler replied that that was too much, as he had only $8,500 when he first opened, and there was not more than $6,000 worth of stock left. Since the levies the sheriff, by the aid of others and his own experience, worked out and solved Kohler's cost mark (his former clerks not knowing it), and took an inventory of the stock which amounted to $10,495, and the same is reasonably and fairly worth that much. While in business in Madison, Kohler sold goods very cheaply and made large sales. On October 21st, E. W. Butler, of Foster & Butler, handed the clerk of the superior court the mortgage to M. S. Kohler, with the request to record it immediately, which was done, and on returning it Butler remarked he understood the paper was not to be recorded but a telegram had just been received directing the same to be done. Where a southern merchant has any commercial standing or credit, the custom or preference of the northern merchants is to sell the class of goods now under levy on time and not for cash, the purchases generally being made for the fall in August or September, on from thirty to one hundred and twenty days' time, there being then very little or no cash on hand, and the same being collected later in the fall.

The allegations of the answers as to M. S. Kohler's

financial ability were supported by an affidavit of the cashier of the bank in Louisville on which he drew the two checks in favor of S. D. Kohler, and as to the circumstances of making the loan, by affidavit of E. W. Butler. F. C. Foster stated that he wrote to M. S. Kohler, informing him that the time for the record of the mortgage would soon expire, and advising him to have it recorded, in response to which M. S. Kohler telegraphed him to have this done; that deponent did not at this time represent S. D. Kohler in any way, and did not write at his instance or from any information received from him; and that at the time the mortgage was left with deponent's firm, he assured M. S. Kohler that he would see that it was recorded in time. There were also affidavits of a banker in Madison and of the cashier of a bank in Augusta, sustaining the allegations as to the remittances of money by S. D. Kohler to Kohler & Co., and as to the discounting of his notes. The books of that firm, showing his account with them for goods sold, with entries of credits for the various payments made by him, as well as a number of paid checks drawn by him in their favor, the paid note for $520.57, and bank notices to him of the times when certain of his notes would fall due, etc., were introduced.

The court ordered that the temporary restraining order be revoked and discharged, and that the sheriff proceed under the levy of the mortgage *fi. fa.* of M. S. Kohler to sell, after advertising ten days, a sufficiency of the stock under levy to satisfy the amount of that *fi. fa.* The plaintiffs excepted to the refusal to grant the injunction and appoint a receiver as prayed for, and to the reception by the court of E. W. Butler's affidavit, he being attorney of record of M. S. and S. D. Kohler and not competent to testify, his knowledge of facts testified to having been acquired from his clients by virtue of his relation as attorney. But no objection

was made or any question raised by counsel for either side as to the competency of said evidence.

M. P. CARROLL, BOYKIN WRIGHT and McHENRY & McHENRY, for plaintiffs.

FOSTER & BUTLER and C. H. COHEN, for defendants.